UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANAND NAYAK, et al.,
Plaintiffs,
v.
JOSEPH B. EDLOW,
Defendant.

Case No. 26-cv-01169-EMC (EMC)

**ORDER GRANTING MOTION TO DISMISS**

Docket No. 22

## I. INTRODUCTION

Plaintiffs Anand Nayak, Vinod Khatri, and Pratik Sureshbhai Patel are citizens of India who seek lawful permanent residence through the EB-5 immigrant investor program. Each alleges that he has invested at least $800,000 in a new commercial enterprise located in a targeted employment area and has filed a Form I-526E, Immigrant Petition by Regional Center Investor, with United States Citizenship and Immigration Services ("USCIS" or "the Agency"). First Amended Complaint ("FAC") ¶¶ 9–11, 81, 92, 103. As of the May 26, 2026 filing date of the FAC, their petitions had been pending approximately 26 months (Khatri), 15 months (Nayak), and 10 months (Patel). *Id.* ¶¶ 86, 97, 108. None has been adjudicated by USCIS.

Plaintiffs do not challenge any decision that USCIS has made, but instead challenge the *absence* of any decision by the Agency and ask the Court to compel adjudication under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1).

Defendant Joseph B. Edlow, Director of USCIS, moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion to dismiss presents two questions. The first is jurisdictional: whether 8 U.S.C. § 1252(a)(2)(B)(ii) withdraws judicial review because 8 U.S.C. § 1153(b)(5)(E)(ii)(II) provides that the Secretary "may process petitions in a manner and order

United States District Court
Northern District of California

established by the Secretary" — language Defendant reads as committing the pace of EB-5 adjudication to unreviewable discretion. The second goes to the merits: whether the FAC pleads a plausible claim of unreasonable delay under the six-factor test set out in *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). Motion to Dismiss ("MTD") (Dkt. 22) at 10–14.

For the reasons set forth below, the Court **GRANTS** the motion and **DISMISSES** the First Amended Complaint **WITHOUT PREJUDICE**.

## II. BACKGROUND

### A. EB-5 Immigrant Investor Program

Congress created the EB-5 immigrant visa category as part of the Immigration Act of 1990, now codified at 8 U.S.C. § 1153(b)(5). The category makes immigrant visas available to noncitizens who invest in a new commercial enterprise ("NCE") in the United States and thereby create at least ten full-time jobs for qualifying American workers. 8 U.S.C. § 1153(b)(5)(A); 8 C.F.R. § 204.6. The required investment is $800,000 for investments in a targeted employment area ("TEA"). 8 U.S.C. § 1153(b)(5)(C), (D). Each Plaintiff alleges a qualifying TEA investment of at least $800,000. FAC ¶¶ 81, 92, 103.

Two structural features of the scheme are particularly relevant to this motion. First, adjudication of the Form I-526E is the gateway step: no later stage of the process can be completed until USCIS acts on the underlying petition. Second, the investor's capital must remain at risk throughout. Plaintiffs allege that the prolonged pendency extends the at-risk period and may require "redeployment of the funds and increased risk of loss." FAC ¶¶ 72–74, 144(a).

Congress restructured the regional center program in the EB-5 Reform and Integrity Act of 2022 ("RIA"). The RIA repealed the prior authorizing statute, removed the word "pilot" from regional center "pilot programs," and relocated the governing provisions into 8 U.S.C. § 1153(b)(5). Dkt. 22 at 4. Three features of the RIA are of particular relevance.

***First***, the RIA directs that, in processing petitions, the Secretary "shall prioritize the processing and adjudication of petitions for rural areas." 8 U.S.C. § 1153(b)(5)(E)(ii)(I). It further reserves portions of the annual EB-5 visa allocation for rural investment (20%), high-

unemployment-area investment (10%), and infrastructure investment (2%). *Id.* § 1153(b)(5)(B)(i). The FAC alleges that each Plaintiff's project lies within a TEA but does not allege that any is rural.

***Second***, the same subparagraph containing the rural-prioritization command provides that the Secretary may establish the sequence of processing. Section 1153(b)(5)(E)(ii), titled "Processing," provides:

> In processing petitions under section 1154(a)(1)(H) of this title for classification under this paragraph, the Secretary of Homeland Security —
>
> (I) shall prioritize the processing and adjudication of petitions for rural areas;
>
> (II) **may process petitions in a manner and order established by the Secretary**; and
>
> . . .

8 U.S.C. § 1153(b)(5)(E)(ii)(I)–(II) (emphasis added).

Clause II is a textual foundation of Defendant's jurisdictional argument. MTD at 7–8; Reply (Dkt. 26) at 2–3.

***Third***, the RIA addressed adjudication speed through the fee structure. Section 106(a) required the Department of Homeland Security to complete a fee study on or before March 15, 2023. Section 106(b) then directed that fees be set at a level sufficient to complete adjudications, on average, within periods ranging from 90 to 240 days, depending on the petition type. For TEA petitions, the target is 120 days. RIA § 106(b)(5); FAC ¶¶ 43–45. Separately, and predating the RIA, 8 U.S.C. § 1571(b) expresses Congress's intention that processing of immigration benefit applications be completed "not later than 180 days after the initial filing of the application." Plaintiffs allege that the Agency did not complete the fee study by the statutory deadline, yet raised EB-5 filing fees substantially in a final rule published January 31, 2024, without correlating the increase to any performance metric. FAC ¶¶ 43, 46–52.

At the hearing on Defendant's motion, the parties represented that the median processing time for these petitions is approximately ten months, and that the eightieth-percentile processing

time is approximately thirty months. Plaintiffs pair these figures with two further allegations. First, as to volume, Plaintiffs allege that the number of Form I-526 petitions received by the agency declined over the same period during which processing times rose. FAC ¶¶ 37, 125. Second, as to Agency resources, Plaintiffs allege that USCIS raised EB-5 filing fees in 2016 and again in 2024, each time on the stated premise that the increase would support timely adjudication, and that the Agency therefore cannot attribute lengthening processing times to a lack of resources. *Id.* ¶¶ 32–34, 124, 149. Plaintiffs also allege declining adjudicator output, with an average of approximately two Form I-526 completions per working day in the first quarter of fiscal year 2022, compared with 59 such adjudications in the first quarter of fiscal year 2018. *Id.* ¶¶ 128–29.

B. Inventory Management Approach

On March 30, 2026, approximately seven weeks after Plaintiffs filed their original complaint, USCIS published on its website a description of a new "inventory management" approach to Form I-526 and Form I-526E petitions. FAC ¶ 57; MTD at 4–5. As described in Defendant's brief, the Immigrant Investor Program Office ("IPO") will "generally assign Form I-526 and Form I-526E petitions under a first in, first out ('FIFO') approach," assigning a Form I-526E for adjudication after adjudicating the associated I-956F, prioritizing rural petitions, and — "[c]onsidering resource and visa availability — grouping the remaining petitions by visa subcategory and assigning them in FIFO order. MTD at 5.

Plaintiffs allege that this system supplies no genuine rule of reason; that USCIS does not in fact adjudicate on a FIFO basis; that USCIS expedites certain petitions associated with favored enterprises without a governing standard; and that the description was "developed as a post-hoc defense to suits like this one." FAC ¶¶ 119(a)–(f), 122.

C. Plaintiffs

Plaintiff **Anand Nayak** invested at least $800,000 in the new commercial enterprise 3G Fund 17, LLC, and filed his Form I-526E on February 20, 2025, paying $12,160 in filing fees. FAC ¶¶ 81, 83. As of the May 26, 2026 FAC filing date, his petition had been pending for more than 15 months with no substantive action taking place on the merits. FAC ¶¶ 86–87. He alleges that the delay has extended the period during which his capital remains at risk and unavailable for

other uses; that he and his wife have declined to pursue employment opportunities requiring permanent residence; and that his wife was temporarily reassigned away from an international portfolio of business because she felt unable to travel. *Id.* ¶ 89(a)–(c). Nayak and his wife applied for and received advance parole, but allege they remain hesitant to travel for fear of questioning or denial of re-entry, and that they canceled visa stamping appointments scheduled for December 2025, with the next available appointment now in 2027. FAC ¶ 89(d)–(e). He further alleges that he was unable to travel to support his father-in-law following a cardiac event in September 2025, and that he and his wife lost a pregnancy in November 2025 while separated from family abroad. FAC ¶ 89(f).

Plaintiff **Vinod Khatri** invested at least $800,000 in the 3G Fund 13, LLC and filed his Form I-526E on March 8, 2024, likewise paying the $12,160 filing fee. FAC ¶¶ 92, 95. As of the May 26, 2026 FAC filing date, his petition had been pending for more than 26 months. FAC ¶¶ 97, 99. Mr. Khatri is a pulmonary and critical care physician, and he alleges that his temporary status limits his employment opportunities and that he has foregone international conferences due to his immigration status. FAC ¶ 100(b)–(e). He alleges that his family is of mixed status; that his daughter, a derivative applicant, faces classification as an international student for purposes of university admission, tuition, and financial aid; and that after traveling on advance parole in the Winter of 2024, he and his family were held in secondary inspection for two to three hours upon re-entry in January 2025, after which they suspended any international travel for the foreseeable future. FAC ¶ 100(c)–(f).

Plaintiff **Pratik Sureshbhai Patel** invested at least $800,000 in Kiran REIF Encore 12 FI, LLC, and filed his Form I-526E on July 22, 2025, also paying $12,160 in filing fees. FAC ¶¶ 103, 107. His petition had been pending slightly more than 10 months as of the date of the May 26, 2026 FAC filing. FAC ¶ 108. Mr. Patel, a dentist, alleges that he purchased his dental practice in March 2026 and that his lack of permanent residence renders him ineligible for small business lending programs, obliging him to secure a line of credit against the equity in his home. FAC ¶ 111(a). He holds H-1B status, has received advance parole, and alleges that he has nonetheless postponed international travel indefinitely. FAC ¶ 111(c)–(d).

United States District Court
Northern District of California

Each Plaintiff paid $12,160 in filing fees. FAC ¶¶ 83, 95, 107, 126.

Each Plaintiff alleges that his capital remains at risk by operation of the program's design and that continued delay may require "redeployment of the funds and increased risk of loss." FAC ¶ 144(a).

## III. LEGAL STANDARD

Defendant's motion to dismiss is predicated on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. A Rule 12(b)(1) jurisdictional attack may be factual or facial. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a "facial attack," "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Under Rule 12(b)(6), a defendant may move to dismiss a cause of action for failure to state a claim for relief. To overcome a Rule 12(b)(6) motion, a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted)." "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id.* (internal quotation marks omitted).

## IV. DISCUSSION

Defendant's motion presents two questions: (1) whether 8 U.S.C. § 1252(a)(2)(B)(ii) withdraws subject matter jurisdiction, and (2) whether the FAC states a plausible claim of unreasonable delay under the six-factor test of *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). Motion to Dismiss ("MTD") (Dkt. 22) at 10–14. Because the Court concludes that Plaintiffs have not stated a claim of unreasonable delay at this stage, it does not resolve the jurisdictional question and turns directly to the merits.

### A. Subject Matter Jurisdiction

Defendant contends that § 1252(a)(2)(B)(ii) strips the Court of jurisdiction because § 1153(b)(5)(E)(ii)(II) provides that the Secretary "may process petitions in a manner and order established by the Secretary" — language that Defendant reads as committing the pace of EB-5 visa adjudication to the unreviewable discretion of the Secretary. MTD at 7–8.

The great weight of authority in this District has sided with Plaintiffs on this question, holding that § 1252(a)(2)(B)(ii) does not bar review of a claim seeking to compel adjudication of a pending petition. *See, e.g.*, *Dinh v. Edlow*, 2026 WL 2001155, at *5–6 (N.D. Cal. July 10, 2026); *Mamaduru v. Edlow*, 2026 WL 2033087, at *4–5 (N.D. Cal. July 14, 2026); *Murugesan v. Edlow*, 2026 WL 1694668, at *3–4 (N.D. Cal. June 11, 2026) (collecting cases); *Pandya v. Edlow*, 2026 WL 1694669, at *3–4 (N.D. Cal. June 11, 2026); *Varniab v. Edlow*, 2026 WL 485490, at *8 (N.D. Cal. Feb. 20, 2026); *see also Shahi v. Edlow*, 2026 WL 2041468, at *2–3 (N.D. Cal. July 14, 2026) (describing the Government's argument as "wholly without merit" and joining "all others that have come before it").

Defendant's § 706(1) argument has also consistently been rejected. *See, e.g.*, *Yousefisahi v. Edlow*, 2026 WL 1388704, at *5–6 (N.D. Cal. May 18, 2026) ("Even as USCIS has discretion in how exactly to sequence and consider adjudication of applications for immigration benefits, 'this discretion does not excuse USCIS from its mandatory obligation to adjudicate . . . applications at some point. Thus, the discrete agency action of adjudicating . . . applications still falls within the ambit of the APA, which vests jurisdiction in the federal courts to review agency

United States District Court
Northern District of California

actions for 'unreasonable delay.'") (quoting *Pichkurova v. L.A. Asylum Off.*, 2025 WL 1723159, at *4 (C.D. Cal. May 7, 2025) (ellipses in original); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1069 (N.D. Cal. 2014); *Khan v. Johnson*, 65 F. Supp. 3d 918, 924–25 & n.4 (C.D. Cal. 2014) ("Although other courts have disagreed, the Court finds persuasive the reasoning of the majority of district courts within this circuit that the government has a non-discretionary duty to adjudicate such a petition within a reasonable period of time, and that to hold otherwise would be to sanction the perpetual delay of governmental obligations that are clearly mandated by law.") (internal quotation marks omitted).

Because Plaintiffs' claim fails at the pleading stage for reasons beside jurisdiction, the Court need not resolve the jurisdictional question and instead proceeds to address the merits of Plaintiffs' claim.

B. Plaintiffs Have Not Stated a Claim for Unreasonable Delay

The APA mandates that administrative agencies adjudicate matters "within a reasonable time." 5 U.S.C. § 555(b). A court may "compel agency action . . . unreasonably delayed" where the agency (1) has a "clear, certain, and mandatory duty" and (2) "has unreasonably delayed in performing such duty." *Vaz v. Neal*, 33 F.4th 1131, 1135–36 (9th Cir. 2022) (citing 5 U.S.C. § 706(1)). Courts in the Ninth Circuit apply the "*TRAC* factors," a six-factor test to determine whether an agency's delay in adjudicating an application is unreasonable under the APA. *See TRAC*, 750 F.2d at 79–80; *Indep. Mining Co.*, 105 F.3d 502, 507 (9th Cir. 1997) (adopting *TRAC* factors in Ninth Circuit).

The six factors are:

(1) Whether the time the agency takes to make its decision is governed by a rule of reason;

(2) Whether Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, such that the statutory scheme may supply content for this rule of reason;

(3) Whether the delays that might be reasonable in the sphere of economic regulation are less tolerable because human health and welfare are at stake;

(4) The effect of expediting delayed action on agency activities of a higher or competing

United States District Court
Northern District of California

priority;

(5) The nature and extent of the interests prejudiced by the delay; and

(6) Whether the agency action is unreasonably delayed notwithstanding any lack of impropriety lurking behind agency lassitude.

*TRAC*, 750 F.2d at 79–80.

1. *TRAC* Factor #1: Rule of Reason and Length of Delay

First, the Court considers whether the USCIS describes a rule of reason governing processing of I-526E petitions. "There is a rule of reason when there is an identifiable rationale for the agency's actions." *Baizakova v. Jaddou*, 2024 U.S. Dist. LEXIS 106414, at *15 (C.D. Cal. June 14, 2024) (citing *Ray v. Cuccinelli*, 2020 WL 6462398, at *9 (N.D. Cal. Nov. 3, 2020)).

Defendant describes an "inventory management" approach under which the Agency "generally" assigns petitions in FIFO order after the associated Form I-956F is approved, subject to rural prioritization and visa-availability considerations. MTD at 5. Courts have frequently recognized that ordering adjudications by filing date is a rule of reason. *See, e.g.*, *Ray v. Cuccinelli*, 2020 WL 6462398, at *8–9 (N.D. Cal. Nov. 3, 2020); *Nibber v. U.S. Citizenship & Immigr. Servs.*, 2020 WL 7360215, at *6 (D.D.C. Dec. 15, 2020); *Muvvala v. Wolf*, 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020); *Verma v. U.S. Citizenship & Immigr. Servs.*, 2020 WL 7495286, at *6 (D.D.C. Dec. 18, 2020). While Plaintiffs allege noncompliance with a FIFO approach, they do not dispute that a genuine FIFO queue would supply a rule of reason. They allege instead that the Agency does not follow the approach it described, and that it "regularly adjudicates later-filed Form I-526E prior to earlier-filed" ones and grants unexplained expedites. FAC ¶ 119(a), (e). These allegations are pleaded "upon information and belief," and are not accompanied by specific, non-conclusory allegations — for example, identification of particular later-filed petitions adjudicated ahead of Plaintiffs' petitions out of order.

More critical at this stage is the length of delay. The first *TRAC* factor "requires courts to consider both the length of the delay and the reasons for the delay." *Shahijani v. Laitinen*, 2023 U.S. Dist. LEXIS 189142, at *9 (C.D. Cal. Oct. 6, 2023). Numerous courts have held that I-526 processing delays in the 26-to-42-month range are not unreasonable as a matter of law. *See, e.g.*,

*Kalinowsky v. Mayorkas*, 2023 WL 6165708, at *6 (N.D. Cal. 2023) (DeMarchi, J.); *Da Costa v. IPO*, 643 F. Supp. 3d 1, 14 (D.D.C. 2022) (Boasberg, J.) (27-month delay); *Mokkapati v. Mayorkas*, 2022 WL 2817840, at *6 (D.D.C. 2022) (Howell, J.) (32-month delay); *Bega v. Jaddou*, 2022 WL 17403123, at *8 (D.D.C. 2022) (three-year delay); *Sarmiento v. Tarango*, 2026 WL 2143877, at *6 (C.D. Cal. 2026) (22-month delay); *see also Naghibolashrafi v. Pompeo*, 2020 WL 1288409, at *4 (N.D. Cal. Mar. 18, 2020) ("[C]ase law in the immigration context uniformly suggest[s] that delays less than four to six years are not unreasonable."); *Yavari v. Pompeo*, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("delays . . . between three to five years are often not unreasonable").

The Court does not adopt a bright-line rule, but these decisions reflect general agreement that delays at or below roughly 30-months — particularly for an EB-5 petition — are not ordinarily unreasonable.[1] At the time of March 26, 2026 filing, Plaintiffs' petitions had been pending between 10 and 26 months. Those periods fall short of the delays that most courts have found unreasonable. Plaintiff Khatri, now waiting for approximately 29 months, presents the strongest claim on the length dimension and stands close to the zone in which courts begin to find delay problematic. Nayak (15 months) and Patel (10 months) present weaker claims at this stage.

At the hearing on Defendant's motion, the parties represented that the median processing time for these petitions is approximately ten months, and that the eightieth-percentile processing time is approximately thirty months. Relative to others, these plaintiffs' waiting time is substantial and above average but not quite extreme. To be sure, Mr. Khatri is approaching that threshold: "with each month that passes, the delay approaches the tipping point." *Velasquez Cortes v. USCIS*, No. 25-cv-03460-EMC (N.D. Cal. July 13, 2026), Dkt. 23.

Accordingly, the first *TRAC* factor weighs in favor of Defendant at this juncture though less so in Mr. Khatri's case.

2. <u>*TRAC* Factor #2: Congressional Timetable</u>

The second *TRAC* factor asks "whether Congress has provided an indication of the speed

---

[1] The Court acknowledges that there are disagreements even within this District, as indicated by the parties' notices of supplemental authority. *E.g.*, Dkts. 30, 31.

with which it expects an agency to act." *Reyes Briseda v. Lehman*, 2024 WL 2112864, at *5 (N.D. Cal. May 8, 2024). Congress has twice indicated the speed at which it expected these petitions to be decided: generally through the 180-day "sense of Congress" in § 1571(b), and more specifically through the 120-day fee-study benchmark of RIA § 106(b). FAC ¶¶ 44–45, 139. Each Plaintiff has waited for a period beyond those timelines. These provisions, however, are aspirational and non-binding, and Defendant is correct that neither creates an enforceable deadline on the Agency. *See Infracost Inc. v Blinken*, 732 F. Supp. 3d 1240, 1256 (S.D. Cal. 2024). Aspirational timetables, however, are entitled to some weight in the *TRAC* analysis. *Id.*; *see also Behdin v. Edlow*, 2026 WL 1031079, at *17 (N.D. Cal. Apr. 16, 2026); *Shahi v. Edlow*, 2026 WL 2041468, at *5 (N.D. Cal. July 14, 2026). While the second *TRAC* factor does not convert Plaintiffs' delay into an unreasonable one — particularly where the length of delay remains far below the range courts have found actionable — it tilts in Plaintiffs' favor.

3. <u>*TRAC* Factor #3 & 5: Health, Welfare, and Prejudice</u>

The third and fifth *TRAC* factors present "overlapping" considerations, *Indep. Mining Co.*, 105 F.3d at 509, focused on "whether human health and welfare are at stake and the nature and extent of the interests prejudiced by the delay." *Fang Yan v. Dir. of L.A. Asylum Off. for the U.S. Citizenship & Immigr. Servs.*, 2023 WL 4053410, at *5 (C.D. Cal. June 16, 2023). They are thus ordinarily considered together. *Indep. Mining*, 105 F.3d at 509.

Prejudice is "significantly reduced" when the applicant may live and work in the United States while the application is pending. *Kulakov v. USCIS*, 2024 WL 4804098, at *6 (E.D. Cal. Nov. 15, 2024). Courts also recognize that a measure of uncertainty attends *every* immigration filing and that harms shared with all similarly situated applicants carry limited weight. *Martirosyan v. Jaddou*, 2025 U.S. Dist. LEXIS 72747, at *14 (C.D. Cal. Apr. 16, 2025).

Plaintiffs identify one interest that distinguishes their situation: their invested capital remains at risk by operation of the program's design, and continued delay prolongs that exposure and may force redeployment into a substitute project. FAC ¶¶ 72–74, 144(a). That is a concrete economic interest, and it is entitled to some weight. The remaining harms Plaintiffs allege, including hesitancy to travel despite advance parole, foregone professional opportunities, and the

anxieties of prolonged uncertainty, while significant, are largely "the ordinary consequences of uncertainty inherent in any visa application process." *Ferro v. Mayorkas*, 2023 WL 4291841, at *4 (C.D. Cal. June 16, 2023).

On balance, these factors do not support relief yet. The at-risk capital is a real prejudice, but it is one that every EB-5 investor awaiting adjudication shares, and standing alone it does not render a delay of 10 to 26 months unreasonable. As with the other factors, however, the weight of this prejudice grows with the length of the delay. The longer Plaintiffs' capital remains exposed and the longer the collateral deprivation (e.g. ability to travel), the more these factors will favor relief.

4. *TRAC* Factor #4: Effect of Expediting Delayed Action

The fourth factor considers "the effect of expediting delayed action on activities of a higher or competing priority." *Fang Yan v. United States Citizenship & Immigr. Servs.*, 2023 WL 4053410, at *5 (C.D. Cal. June 16, 2023). Even when all other factors favor the plaintiff, courts have denied relief under the fourth TRAC factor where "a judicial order putting [the plaintiff] at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F. 3d 1094, 1100 (D.C. Cir. 2003). District courts in the Ninth Circuit have found that this factor "strongly favors" the Government given its competing priorities, "such as adjudicating the petitions that were filed before [plaintiff's] and those that require expedited review due to exigent circumstances." *Yan*, 2023 WL 4053410, at *5; *see also Varol v. Radel,* 420 F. Supp. 3d 1089, 1098 (S.D. Cal. 2019); *Teymouri*, 2023 U.S. Dist. LEXIS 17280, 2022 WL 18717560, at *5; *Reyes Briseda*, 2024 U.S. Dist. LEXIS 84159, 2024 WL 2112864, at *7; *Denisov v. Mayorkas,* No. 23-cv-06442-SI, 2024 U.S. Dist. LEXIS 130207, at *18 (N.D. Cal. July 23, 2024).

Plaintiffs' response, that no functioning queue exists and that no one is thus displaced, depends on the same conclusory allegations of out-of-order processing that the Court found insufficient plead with respect to the first *TRAC* factor.

Two observations, however, bear on any renewed challenge. The fourth *TRAC* factor and the length of delay component of the first factor interact along a sliding scale. As a petitioner's

wait lengthens and moves toward and past the eightieth percentile of processing times of 30 months, the delay itself grows more significant under the first factor. And with this shift, the number of petitioners who would be "leapfrogged" by an order compelling adjudication necessarily shrinks under the fourth factor. Put simply, the longer a petitioner waits, the more the first factor weighs in their favor and the less the fourth factor weighs in the Agency's favor. For a petitioner near the median, such as Patel and Nayak, both considerations cut against relief at this juncture. For a petitioner approaching the eightieth percentile, such as Khatri, the balance is much closer — though on this record it has not yet tipped.

5. <u>*TRAC* Factor #6: Impropriety</u>

The sixth *TRAC* factor considers "whether there was any impropriety by the agency." *Reyes Briseda*, 2024 WL 2112864, at *7 (N.D. Cal. May 8, 2024).

Plaintiffs allege that the Agency raised EB-5 filing fees before completing the fee study that RIA § 106(b) required, that each Plaintiff paid the higher fee, and that Defendant committed an improper act by collecting such fees while promising faster adjudication times when adjudications in fact grew slower. Plaintiffs also allege that the inventory management approach is a post-hoc litigation defense, due to the fact that the Agency published the description of the inventory management system on March 30, 2026, roughly seven weeks after this suit was filed.

The sixth factor does not favor dismissal. Whether it affirmatively favors Plaintiffs need not be decided, because the remaining factors do not support a finding of unreasonable delay and the presence or absence of impropriety does not change the result.

* * *

Weighing the factors together, the Court concludes that the FAC does not plausibly allege unreasonable delay at this juncture. The delays, between 10 and 26 months as of the filing of the FAC, fall within the range that courts have consistently found reasonable; the fourth factor weighs against displacing earlier-filed petitioners, though more so for some plaintiffs than others; the prejudice and impropriety factors do not yet tip the balance. The second factor favors Plaintiffs modestly, but is not dispositive.

The Court's conclusion reflects the state of the record and the length of the delays as they

stand today — it is not a judgment that these petitions may languish indefinitely. The claims differ in strength across Plaintiffs, and the balance shifts with time. Plaintiff Khatri's wait, now approaching or exceeding 29 months, sits near the edge of the range in which courts have begun to find delay unreasonable. Should the Agency continue to withhold adjudication, a renewed challenge may well warrant a different result. For that reason, dismissal is **WITHOUT PREJUDICE**.[2]

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**. The First Amended Complaint is dismissed **WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

Dated: August 28, 2026

EDWARD M. CHEN
United States District Judge

[2] Plaintiff seeks fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. FAC ¶¶ 156–59. Entitlement to fees depends on prevailing on the merits. Because the Court dismisses the FAC without prejudice at this time, the claim for fees is dismissed as well, also without prejudice.